UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>H. GAMBOA and R. ROQUE,<br><br>Defendants. | Case No. 1:17-CV-00302-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(ECF NO. 44)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Plaintiff, Jesse Washington, is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. This action now proceeds on Plaintiff's initial complaint (the "Complaint"), filed March 3, 2017, on a claim for retaliation in violation of the First Amendment against defendants H. Gamboa and R. Roque. (*See* ECF Nos. 1, 11, 13, 36, 38.)

On January 10, 2019, Defendants filed a motion for summary judgment.[1] (ECF No. 44.) On February 4, 2019, Plaintiff filed his opposition to the motion. (ECF No. 45.) On February 12, 2019, Defendants filed a reply to Plaintiff's opposition (ECF No. 46) and lodged a copy of Plaintiff's deposition transcript (ECF No. 47).

Defendants' motion for summary judgment is now before the court. Local Rule 230(l). The Court recommends that Defendants' motion be denied.

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion (ECF No. 44-6). *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).

1

## I. FACTUAL BACKGROUND

Plaintiff is presently incarcerated at California Men's Colony in San Luis Obispo, California, in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). The events at issue in the Complaint occurred at California State Prison - Corcoran ("CSP-C") in Corcoran, California, while Plaintiff was incarcerated there. Prior to being transferred to CSP-C, plaintiff was incarcerated at Kern Valley State Prison ("KVSP").

While Plaintiff was incarcerated at KVSP, Plaintiff and prison officials reached an agreement in relation to a grievance that had been filed by Plaintiff. Under this agreement, Plaintiff understood that he was allowed to possess two music CDs in addition to the maximum ten CDs that prisoners were generally allowed under prison regulation.[2] (ECF No. 45 at 30, 37, 38-39; ECF No. 44-3 at 27, 43.)

In August 2011, Plaintiff was transferred from KVSP to CSP-C. When he was transferred, Plaintiff possessed twelve music CDs (the ten CDs allotted to prisoners plus the two he was awarded in the grievance). (ECF No. 45 at 30.) In June 2014, Plaintiff was awarded three additional musical CDs in settlement of another grievance. (ECF No. 45 at 30-31, 58.) Thus, as of August 2011, Plaintiff had a total of fifteen music CDs—the ten allotted to prisoners plus the five additional CDs he was awarded through the two grievances he had filed. It was Plaintiff's understanding that he was allowed to possess these fifteen CDs.

On May 5, 2015, Plaintiff filed a grievance against officers H. Flores and S. Longorio because these officers refused to document on Plaintiff's property card the five additional music CDs Plaintiff was awarded through the previous grievances.[3] (ECF No. 45 at 30, 48; ECF No. 44-3 at 27, 43.)

The appeal was assigned to Defendant Gamboa. (ECF No. 4403 at 2.) On May 29, 2015, Gamboa conducted a first level review interview with Plaintiff. Plaintiff told Gamboa that he possessed fifteen music CDs. (ECF No. 44-3 at 2; ECF No. 45 at 18, 50.) On May 31,

---

[2] Plaintiff was also awarded an additional Timex watch above the one watch allotment. The Timex watch does not appear to be at issue here and will thus not be discussed.

[3] Plaintiff also claims that he was allowed an additional set of headphones, for a total of two headphones. The headphones do not appear to be at issue here and will thus not be discussed.

2015, Gamboa denied the appeal. Gamboa found that Plaintiff did not have proof that he had been awarded the additional CDs; further, that any items that had been awarded to Plaintiff had to count toward the total allotment that prisoners were allowed to possess; and finally that Gamboa could not document all of Plaintiff's property on the property inventory card because it appeared that Plaintiff possessed more property than the amount allowed by regulation. (ECF No. 44-3 at 2, 9-10; ECF No. 45 at 50.) Under regulation, Plaintiff was only allowed to have a total of ten CDs. (ECF No. 44-3 at 2, 13-22.)

Plaintiff submitted the appeal for second level review, and relief was denied at the second level on July 12, 2015. (ECF No. 45 at 18; ECF No. 44-3 at 2, 24-25.)

Plaintiff then submitted the appeal for third level review. (ECF No. 45 at 31; *see* ECF No. 44-3 at 2; ECF No. 44-5 at 2.) The appeal was accepted for third level review on January 12, 2016.[4] On March 4, 2016, Plaintiff received a response on the third level review. This response stated that the appeal had been forwarded for further action and that, if Plaintiff is not satisfied with the further action taken, he could resubmit his appeal for third level review. (ECF No. 45 at 56.)

The third level review "forward" was actually a referral of the appeal back to the appeals coordinator at CSP-C with the request that further action be taken and that the second level appeal be amended. (ECF No. 44-3 at 27; ECF No. 45 at 44-45.) The referral explained that Plaintiff was requesting that his property inventory reflect additional items that were awarded to Plaintiff in satisfaction of an appeal at KVSP. The referral also stated that this KVSP appeal had been located and confirmed.[5] (*Id.*) The referral recommended that CSP-C

> conduct an inventory of the appellant's watches, CDs and headphones and document these items on the appellant's [property inventory] pursuant to DOM 54030.12.1 which states in part, 'Personal property items, which are not consumable and that possess enough intrinsic value to be a significant target for theft or bartering, are considered registerable property. Registerable personal

---

[4] This delay in the third level review was apparently due to various deficiencies in the appeal filed by Plaintiff. The deficiencies were eventually resolved and the was appeal accepted for third level review on January 12, 2016. (ECF No. 44-5 at 2.)

[5] Although not in the referral, during the third level review it was confirmed that Plaintiff had been awarded one Timex watch, two CDs, and one pair of headphones in connection with the resolution of the previous appeal at KVSP. (ECF No. 44-5 at 2-3.)

3

> property is identified in the APPS located [in] Appendix A. When designated items are identified as registerable, such items must be registered under the inmate's name and number on the CDC Form 160-H, Inmate Property Control Card.' Should the appellant have personal property over the allowable amount according to the APPS, the institution should allow the appellant to choose a disposition of this personal property in accordance with CCR 3191. All of these actions should be documented on an amended SLR [second level review].

(ECF No. 45 at 44.)

Following the referral, Gamboa conducted an additional interview with Plaintiff and during this interview Gamboa "displayed hostility and anger towards Plaintiff and further told Plaintiff that he shouldn't have sent the property appeal log #CSPC-2-15-02423 to the Director's Level of Review." (ECF No. 45 at 31-32.)

Shortly thereafter, on March 14, 2016, Gamboa and Roque conducted an inventory search of Plaintiff's cell while Plaintiff was at work. (ECF No. 44-3 at 2-3; ECF No. 45 at 32.) When they arrived at the cell to conduct the search, they told Plaintiff's cell mate to step out of the cell while they conducted a search. (ECF No. 45 at 60.) Gamboa's demeanor "appeared as though she was in an agitated state of mind, and that she did display somewhat of hostility towards" the cell mate. (ECF No. 45 at 60.) Gamboa and Roque searched Plaintiff's property and confiscated eleven CDs and a legal mail priority box, and left Plaintiff's legal property in disarray. (ECF No. 45 at 32, 60; *see* ECF No. 44-3 at 3 (stating that they confiscated eleven CDs).)

Gamboa and Roque contend that, during the search they located twenty-one CDs, confiscated eleven CDs, and left Plaintiff with ten CDs. (ECF No. 44-3 at 3.) Plaintiff agrees that Gamboa and Roque confiscated eleven CDs but contends that Gamboa and Roque falsely claimed that Plaintiff possessed twenty-one CDs, that he instead possessed only fifteen CDs, and that, thus, when Gamboa and Roque took eleven CDs they left Plaintiff with only four CDs. (ECF No. 46-1 at 9-10; ECF No. 45 at 29.)

After Plaintiff returned to his cell from his work shift and learned of the search, Plaintiff sought out and spoke with Gamboa and Roque. Plaintiff spoke with them about the search, including their confiscation of Plaintiff's CDs and legal mail priority box, and their leaving Plaintiff's property in disarray. (ECF No. 45 at 32.) Gamboa told Plaintiff, "you got what was

coming to you," and that you "shouldn't have returned the property appeal log #CSPC-2-15-02423 to the Director's Office for" third level review. (ECF No. 45 at 32-33.)

Gamboa and Roque stated in a CDCR-128-B informational chrono, dated March 14, 2016, that Plaintiff refused to sign the authorization to allow them to mail the eleven confiscated CDs home at Plaintiff's own expense.[6] (ECF No. 44-4 at 4, 6.) Plaintiff contends that Defendants falsely stated in this chrono that Plaintiff refused to sign or authorize sending the CDs home. (ECF No. 45 at 33, 54-55.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.*" Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), quoting Fed. R. Civ. P. 56(c). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the court must determine "whether a fair-minded jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla

---

[6] The second level response states: "You were afforded options for disposition [of the confiscated CDs] per CCR, Title 15, Section 319(c). You refused to make a selection." (ECF No. 45 at 55.)

5

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n.2. But, "if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

Additionally, the Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

**III.    SECTION 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*,

490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To prevail on a claim under § 1983, a plaintiff must demonstrate that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

**IV.     DISCUSSION**

Defendants move for summary judgment on Plaintiff's claim that Defendants retaliated against him for exercising his First Amendment right to file and pursue grievances.

In the prison context, a claim for retaliation has five elements: (1) that the plaintiff engaged in protected conduct, (2) that a state actor took an adverse action against the plaintiff, (3) that the adverse action was taken because of the plaintiff's protected conduct, (4) that the adverse action chilled the plaintiff's exercise of his First Amendment rights, and (5) that the adverse action did not reasonably advance a legitimate correctional goal. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.

7

2005); *accord Wood v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds, Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes,* 408 F.3d at 567.

Defendants move for summary judgment, claiming (a) Plaintiff cannot establish that they had a retaliatory motive; (b) their conduct reasonably advanced a legitimate correctional goal; and (c) they are entitled to qualified immunity.

**A. Retaliatory Motive**

Defendants argue that Plaintiff cannot establish that they had a retaliatory motive when they performed an inventory of his property or confiscated the eleven CDs. They contend that they were not acting in retaliation when they confiscated these CDs but were instead acting in accordance with instructions from the Office of Appeals to inventory and ensure that all of Plaintiff's property was properly documented, and, further, that they would not have "entered Plaintiff's cell had it not been for the instructions of the Office of Appeals." (ECF No. 44-1 at 5.) Defendants also contend that "it cannot be seriously argued that the inventory of Plaintiff's property and confiscation of eleven CDs—which he was prohibit[ed] from possessing— amounted to retaliation." (*Id.*)

Defendant's arguments overlook the basis for Plaintiff's retaliation claim and the evidence provided by Plaintiff in support of that claim. As set forth above, Plaintiff has provided evidence that he possessed only fifteen music CDs, and not the twenty-one CDs that Defendants claim, and that Defendants' seizure of the eleven CDs resulted in Plaintiff only having four CDs and not the ten CDs claimed by Defendants. This evidence, viewed in the light most favorable to Plaintiff, supports a finding that Defendants were being dishonest about the

8

number of CDs possessed by Plaintiff, and that they confiscated more CDs than necessary to bring Plaintiff into compliance with the allowance of ten CDs.

Plaintiff has also provided evidence that following the referral back from the third level review, Gamboa displayed hostility and anger towards Plaintiff and told Plaintiff that he shouldn't have submitted the third level property appeal; that Gamboa displayed hostility during the search and left Plaintiff's legal property in disarray; that, following the search, in the presence of Roque, Gamboa told Plaintiff that Plaintiff got what was coming to him, and that Plaintiff should not have filed the third level appeal; and that Gamboa and Roque falsely stated in a CDCR-128-B informational chrono that Plaintiff refused to sign the authorization that would allow the eleven confiscated CDs to be mailed to Plaintiff's home at Plaintiff's own expense. This evidence is sufficient to create a genuine dispute of fact regarding retaliatory motive.

Defendants also argue that the evidence Plaintiff relies on is directly contradicted by Plaintiff's deposition testimony and thus that Plaintiff has failed to create a genuine dispute of fact as to retaliatory motive.

It is well established that "[a] party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts." *Block v. City of Los Angeles*, 253 F.3d 410, 419, n.2 (9th Cir. 2001); *see Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."); *see also Cleveland v. Policy Management Systems, Corp.*, 526 U.S. 795, 806 (1999) (noting that lower federal courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement [by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition] without explaining the contradiction or attempting to resolve the disparity" (collecting cases)). As discussed below, the inconsistencies between Plaintiff's deposition testimony and declaration do not destroy the genuine issues of material fact raised by Plaintiff regarding whether Defendants acted with retaliatory motive.

Plaintiff states in his declaration that during the first level review, Plaintiff told Gamboa that Plaintiff intended to pursue a property appeal in small claims court if he needed to do so to appropriately resolve the matter, and that this "infuriated [Gamboa] with rage towards Plaintiff." (ECF No. 45 at 31.) In contrast, in his deposition Plaintiff testified that during the first level review process he did not have any problems with the way Gamboa treated him, and that the problems with Gamboa only arose after the appeal was referred back from third level review:

> Q. Okay. During her involvement with you on those two appeals [in May 2015], at least during the first interview involving Flores and Langoria, did you have any problem with the way Gamboa handled the interview?
>
> A. No. She seemed to be pretty professional at that time. There was no hostility or anything. I thought she was doing her job.
>
> . . . .
>
> Q. But then after that, you had some notice from the third level . . . that says, "Well, Mr. Washington, we are going to be looking into this further or issuing an amended response. Just sit tight and we will get back to you." Is that something that you recall?
>
> A. Yes, correct. . . . [O]nce they seen the issue and seen that I had an issue, they remanded back to an amended response, telling Corcoran, "You should address that issue." That's what they were saying in so many words. So when that appeal came back from the second level, that's when I had problems with Defendant Sergeant Gamboa. That's when the retaliation came in because she was assigned to hear that again.

(ECF No. 46-1 at 5-9.)[7]

This contradiction between Plaintiff's deposition testimony and his declaration regarding whether Gamboa acted with hostility toward Plaintiff during the first level review may affect the weight given to Plaintiff's testimony by the finder of fact. The inconsistency is not, however, fatal at the summary judgment stage given the consistency in Plaintiff's deposition testimony and declaration regarding the hostility Gamboa displayed after the referral back from the third level review. (*See* ECF No. 46-1 at 7 (Deposition testimony that when the

---

[7] Plaintiff clarified later in his deposition that Gamboa and Roque took eight music CDs of which three were double CDs. (ECF No. 46-1 at 9.) The Court interprets this testimony as meaning that they took a total of eleven CDs, which is consistent with Plaintiff's complaint, briefing, and declaration.

"appeal came back from the second level, that's when I had problems with Defendant Sergeant Gamboa. That's when the retaliation came in because she was assigned to hear that again."); ECF No. 45 at 32-33 (declaration stating that after the confiscation of the CDs, Gamboa told Plaintiff that he shouldn't have appealed to the third level, and that he got what was coming to him).)

Defendants also point out that there is an inconsistency between Plaintiff's declaration and deposition testimony regarding the number of times Gamboa interviewed Plaintiff. In his declaration, Plaintiff declared that Gamboa interviewed Plaintiff both during the first level review and after the referral back from the third level. (ECF No. 45 at 31.) In his deposition, Plaintiff testified:

> Q. Okay. And then my understanding is that Gamboa was assigned to look into it again. And did she interview you a second time?
>
> A. No. She just came to my cell when I wasn't there, her and Defendant Roque, when I was at work. And they went in my cell and ransacked my cell and took eight CDs.[8]

(ECF No. 46-1 at 7-8.) This inconsistency regarding the number of times Gamboa interviewed Plaintiff may affect the weight given to Plaintiff's testimony by the finder of fact. The inconsistency is not, however, fatal at the summary judgment stage when viewed in light of the other evidence submitted by Plaintiff regarding Defendants' retaliatory motive.

Finally, Defendants point out what they claim is an inconsistency between Plaintiff's declaration and his deposition testimony regarding the number of CDs he possessed. In his declaration, Plaintiff declares that "he has never possessed more than (15) Musical Compact Discs (CD) while confined" at CDCR facilities from 1996 through the date of his declaration in January 2018. (ECF No. 45 at 34.) In his deposition, Plaintiff also testified that he had "15 CDs," then further clarified that he had "15 musical CDs" and "three Arabic language CDs." (ECF No. 46-1 at 9, 10.) The Court does not find Plaintiff's declaration and deposition testimony to be inconsistent on this issue.

---

[8] As noted previously, Plaintiff explained that three of the eight CDs confiscated by Defendants were double CDs. (ECF No. 46-1 at 9.) Thus, Defendants confiscated a total of eleven CDs.

A reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could conclude that Defendants had a retaliatory motive when they engaged in the alleged conduct of falsely reporting that Plaintiff had twenty-one CDs instead of fifteen CDs; confiscating eleven CDs leaving Plaintiff with only four CDs; and falsely reporting that Plaintiff refused to designate that he wanted the confiscated property sent to his home at his own expense.

### B. Legitimate Correctional Reason for Confiscation of CDs

Defendants argue that their confiscation and disposal of the eleven CDs was for a legitimate correctional purpose and that they are therefore entitled to summary judgment on Plaintiff's claim of retaliation. Specifically, Defendants contend that because Plaintiff had twenty-one CDs and was allowed only ten CDs under prison regulations, their seizure of the eleven CDs was for a legitimate correctional purpose and thus cannot be grounds for a claim of retaliation. (ECF No. 44-1 at 5-6.)

Defendants' argument overlooks Plaintiff's contention and evidence that he only had fifteen CDs in his possession; that Defendants falsely reported that Plaintiff had twenty-one CDs in order to retaliate against him; that Defendants confiscated eleven of the fifteen CDs, leaving Plaintiff with only four CDs; and that Defendants falsely reported that Plaintiff refused to designate that he wanted the confiscated property sent to his home at his own expense. This evidence raises a genuine factual dispute as to whether there was a legitimate correctional purpose for *all* of Defendants' alleged conduct.[9]

### C. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

---

[9] Although Plaintiff contends that he was entitled to possess all fifteen CDs, the third level review determined that although Plaintiff had been awarded additional CDs in connection with a previous grievance, these additional CDs were to count towards the total number of CDs Plaintiff was entitled to possess (ten CDs) and that any excess CDs should be confiscated. (ECF No. 44-3 at 27; No. 44-5 at 2-3; ECF No. 45 at 44-45.) Thus, Defendants had a legitimate penological purpose in seizing any CDs in excess of ten. Viewing the evidence in the light most favorable to Plaintiff, he had a total of fifteen CDs, meaning that Defendants could legitimately seize five to bring the total CDs possessed by Plaintiff down to the allowed ten CDs, but could not legitimately seize eleven CDs to bring the total CDs possessed by Plaintiff down to only four CDs.

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal citations and marks omitted). In order for a right to be considered clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Here, Defendants argue that they are entitled to qualified immunity because "it would not have been clear to every reasonable correctional official that performing an inventory of an inmate's property pursuant to the instruction of the Office of Appeals would constitute a violation of that inmate's First Amendment rights"; and that "[i]t would also not have been clear that confiscating CDs in excess of the amount allowed under CDCR regulations could be considered retaliatory where, as in this case, the office of appeals had actually recommended that the institution dispose of any property in excess of the amount the inmate was allowed to possess. . . ." (ECF No. 44-1 at 8.) Again, Defendants overlook the basis for Plaintiff's retaliation claim and the evidence provided by Plaintiff in support of that claim.

As discussed above, Plaintiff is claiming that Defendants retaliated when they falsely stated during the search and inventory process that Plaintiff had twenty-one CDs when he only had fifteen CDs; when they seized eleven of those fifteen CDs, leaving Plaintiff with only four CDs rather than ten CDs; and when they falsely stated in an informational chrono that Plaintiff refused to sign the authorization that would allow the eleven confiscated CDs to be mailed to Plaintiff's home at Plaintiff's expense. In other words, there is a dispute of fact. Defendants' qualified immunity argument is based on Defendants' version of the facts, which is contested.

It was clearly established at the time of this alleged conduct that the confiscation and destruction of a prisoner's personal property in retaliation for the prisoner's First Amendment activities was actionable. *See Rhodes v. Robinson*, 408 F.3d 559, 568 (2005) (finding actionable retaliation claim based on allegations that prison officials had, among other things, "arbitrarily confiscated, withheld, and eventually destroyed [the prisoner's] property" in response to the

prisoner's First Amendment activities); *see also Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (agreeing with other Circuit Courts that "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right"). A reasonable officer would not have believed, in 2016, that it was lawful for him to falsely claim that a prisoner had property in excess of that allowed under prison regulations, wrongly confiscate that property, and falsely claim that the prisoner refused to authorize the confiscated property be sent to his home, resulting in the destruction of the property in retaliation for the prisoner's filing an appeal of a grievance. Defendants are therefore not entitled to qualified immunity.

## V.  CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court finds that there is a genuine dispute of material fact as to whether Defendants retaliated against Plaintiff in violation of the First Amendment, and that Defendants are not entitled to summary judgment on the issue of qualified immunity. Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (ECF No. 44) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**August 19, 2019**__    /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE

14